[Columbus Iron Works Co. v. Renfro Bros.]

# Columbus Iron Works Co. *v.* Renfro Bros.

71   577
107   397
107   716

## *Trial of Right of Property.*

1.  *Trial of right of property; claimant must have legal title.*—The statu-tory trial of the right to property levied on under legal process, being merely a cumulative remedy, not superseding the ordinary common law actions of trespass, trover, or detinue, it can be maintained only where, at com-mon law, these actions could have been maintained; and hence, in ac-
37

[Columbus Iron Works Co. v. Renfro Bros.]

cordance with the rules applicable to these actions, the claimant must have the legal title, or actual possession, and must recover on the strength of his own title.

2. *Same; mortgagee in mortgage of unplanted crop can not maintain.* A mortgage of an unplanted crop does not pass to the mortgagee the legal title to the crop as it may be planted, or as it may come into existence; and hence, he can not maintain, on the title conferred by the mortgage, a statutory claim suit for recovery of the crop, if, when the crop comes into existence, a creditor of the mortgagor should seize it under legal process.

3. *Same; when he may maintain.*—But the equitable title of the mortgagee under such mortgage may be converted into a legal title by some new act on the part of the mortgagor after the crop has come into existence, in ratification and confirmation of the mortgage, as by a delivery of the crop to the mortgagee, or to another for him; and when his title has been thus perfected, it will support a statutory claim suit for the recovery of the crop against an attaching or execution creditor of the mortgagor.

4. *Mortgage on unplanted crop; what act amounts to confirmation.*—A delivery of the crop, after it has been gathered, to the agent of a railroad company for transportation to the mortgagee, is such a new act in ratification and confirmation of the mortgage as passes the legal title.

APPEAL from Chambers Circuit Court.

Tried before Hon. JAMES E. COBB.

The Columbus Iron Works Co., having obtained a judgment against one Chisholm in the Circuit Court of Tallapoosa county, caused an execution issued thereon to be levied on five bales of cotton as the property of the defendant in execution. To this cotton Renfro Bros. interposed a claim, and the cotton was delivered to them by the sheriff, an affidavit having been made and bond given as required by the statute. The trial was had "on issue made up and joined under the direction of the court,"and resulted in a verdict and judgment for the claimants.

The evidence introduced on the trial tended to show that the execution was received by the sheriff of Chambers county on 12th November, 1880, and was levied on the cotton in controversy on the day following; that at the time of the levy the cotton was in the depot of the East Alabama Railway Company at a station on said road in said county, and was marked with the initials of the defendant in execution; that the cotton was delivered to the railroad company by Chisholm's servant, who told the company's agent that Chisholm had directed him to have the cotton consigned to the claimants; that the cotton was so consigned, and a receipt was given therefor in Chisholm's name, as requested by the servant. The claimants claimed title to the cotton under two mortgages executed by Chisholm and others in November, 1879, "on the crops of said parties to be grown in the year 1880;" and it was shown that the cotton was raised during that year, and was a part of the crop covered by the mortgages.

The plaintiff asked the court in writing to charge the jury

that, if they believed from the evidence, that the cotton in dispute was delivered to the agent of the railroad company as the property of Chisholm, with instructions to ship it to the claimants, this alone would not amount to a delivery to the claimants. The court refused to give this charge, and, at the claimants' written request charged the jury, in substance, as follows: That, if they believed from the evidence that the cotton was mortgaged to the claimants, and was delivered to the railroad company at a designated station, "to be delivered to" the claimants, the delivery to the company was a delivery to the claimants; and if it was so delivered before the execution was received by the sheriff, then the jury must find for the claimants. To these rulings of the Circuit Court the plaintiff duly excepted; and they are here assigned as error.

N. D. DENSON, for appellant.

W. H. BARNES, contra.

BRICKELL, C. J.—The statutory trial of the right to property levied on by legal process has, from its origin, been regarded as merely a cumulative remedy, not superseding the ordinary common law actions of trespass, trover, or detinue. It can be maintained only where, at common law, these actions could have been maintained, and hence, in accordance with the rules applicable to these actions, the claimant must have a legal title to support it, or actual possession, which is but evidence of such title, and must recover upon the strength of his own title.—*Lehman v. Warren*, 53 Ala. 535.

It is the settled doctrine in this court, that a mortgage of an unplanted crop does not pass to the mortgagee a legal title to the crop as it may be planted, or as it may come into existence. In a court of equity it operates by way of present contract, taking effect and attaching to the crop when, and as soon as it comes *in esse*, creating a right the court will enforce and protect against all others than *bona fide* purchasers for value. *Abraham v. Carter*, 53 Ala. 8; *Booker v. Jones*, 55 Ala. 266; *Rees v. Coats*, 65 Ala. 256; *Grant v. Steiner, Ib.* 499. Such a mortgagee, not having a legal title, having only an equity, can not maintain a trial of the right of property, if, when the crop comes into existence, a creditor of the mortgagor should seize it on legal process; his remedy for the recovery of the things *in specie* is in equity exclusively.—*Stern v. Simpson*, 62 Ala. 194; *Grant v. Steiner, supra*.

While the mortgage of an unplanted crop operates only by way of contract, creating originally merely an equity, yet, after the crop comes into existence, the mortgagor may by a *new act*

intended to render the mortgage effectual, make it valid and operative, vesting the legal title.—*Abraham v. Carter*, *supra*; *Jones v. Richardson*, 10 Metc. 481; *Head v. Goodwin*, 37 Me. 181. The crop being *in esse*, a visible, tangible, actual chattel, the subject of immediate sale or of transfer, the mortgagor may ratify and confirm his contract, and by ratification and confirmation may convert the equity into an alienation and transfer of the chattel. The character of the *new act*, to which this operation can be ascribed, has been the subject of much discussion; but that a delivery of the thing or chattel itself is unequivocal, vesting the legal title, has not been doubted. The delivery may be to the mortgagee personally, or it may be to his agent, for a delivery to an agent is the equivalent of a delivery to the principal.—Jones on Chat. Mort. § 180. And a delivery to a carrier for the purpose of transportation to the mortgagee, will operate to vest title in the latter. Such is the settled doctrine, where there is an executory agreement for the sale of undistinguished or unspecified chattels, or, as between vendor and vendee, or as against third persons, delivery may be essential to the completion of a sale. The delivery to the carrier is such an appropriation to the uses of the vendee, that it vests in him immediately, in contemplation of law, the property in the goods.—Benjamin on Sales (1st Ed.), 250; 2 Smith Lead. Cases (7th Am. Ed.), 1193.

The mortgage in the present case operated originally merely by way of contract, and created an equity only. But after the crop had come into existence, the delivery to the agent of the railroad company for transportation to the mortgagee was a new act in ratification and confirmation of the mortgage, passing the legal title. The delivery was complete before the execution of the appellants came to the hands of the sheriff, preventing the acquisition of a lien which could prevail over the prior equity and the legal title of the claimants. The delivery was not qualified, or its effect lessened, because the agent of the railroad company gave the mortgagor a receipt for the cotton. The shipment and consignment the mortgagor instructed should be made to the mortgagee, and the receipt was simply evidence of the extent to which he had complied with the obligation of the mortgage.

The rulings of the Circuit Court were in conformity to these views, and its judgment must be affirmed.