COHN-GOODMAN CO. *v.* PEOPLE'S SAVINGS BANK OF
GRAND HAVEN.

1. BILLS AND NOTES—NEGOTIABLE INSTRUMENTS—CONTRACTS—AS-
SIGNMENTS.

A certificate of deposit containing the stipulation that it
was payable "on the return of this certificate properly
indorsed," was a. contract, the title to which would pass
by assignment, and the assignee could recover in a suit
thereon to the same extent that his assignor could, and
the question of its negotiability is not controlling.

2. BANKS AND BANKING—CERTIFICATE OF DEPOSIT—PAYMENT—LIA-
BILITY OF BANK.

Where a bank paid the amount represented by a certificate
of deposit to the person depositing same,. without re-
quiring the return of the certificate duly indorsed, which
it was not required to do by the terms of the instrument,
it acted at its peril in so doing.

3. SAME.

The mere fact that a person deposited money payable to
. another, receiving a certificate of deposit therefor, gave
him no right to receive the money nor the bank the right
to pay him without the return of the instrument duly
indorsed.

4. APPEAL AND ERROR—TRIAL—SPECIAL QUESTIONS.

The refusal of the court below to submit special questions,
none of which was controlling, was not erroneous.

5. PLEADING—BILL OF PARTICULARS—VARIANCE.

In an action on a certificate of deposit, where plaintiff was
allowed to trace the money and to show whose money
was deposited and the circumstances of the transaction,
there is no merit in the contention that plaintiff was al-
lowed to ignore its bill of particulars which stated the
cause of action consisted of a certificate of deposit, a copy
of which was set forth in the declaration, since there
was no effort to change the terms of the certificate which
did not state that the money belonged to the one depositing
it, or that it was payable to him in any contingency.

6. DEPOSITIONS—OBJECTIONS—WAIVER—STATUTES.

Objections to depositions not made within ten days under

3 Comp. Laws 1915, §§ 12494, 12497, and not noticed for hearing under Circuit Court Rule No. 37, will be regarded as waived.

7. APPEAL AND ERROR—DEPOSITIONS—DIRECTED VERDICT.

Where plaintiff's evidence warranted a directed verdict in its favor without receiving in evidence a deposition of its president, any error in its reception becomes unimportant.

Error to Ottawa; Cross, J. Submitted June 7, 1918. (Docket No. 65.) Decided September 28, 1918.

Assumpsit by the Cohn-Goodman Company against the People's Savings Bank of Grand Haven on a certificate of deposit. Judgment for plaintiff. Defendant brings error. Affirmed.

*Charles E. Soule* (*Charles E. Misner,* of counsel), for appellant.

*Lillie, Lillie & Lillie,* for appellee.

STONE, J. Action to recover the amount claimed to be due plaintiff upon a certificate of deposit issued by defendant. In April and May, 1917, the plaintiff, an Ohio corporation, was engaged in the business of merchandising at Cleveland, Ohio. Charles P. Jacobs was one of plaintiff's traveling salesmen, and as such visited the city of Grand Haven on April 30, 1917. He was arrested on that day on a warrant issued by Isaac N. Tubbs, a justice of the peace, charged with having made a felonious assault on a little girl, and while in custody of the sheriff in the jail he employed Charles E. Misner, an attorney, to defend him, and Misner saw Jacobs at the jail and they both communicated with the plaintiff by telephone. The precise conversation between Misner and the plaintiff was a disputed matter. It was undisputed that Misner arranged with the justice that the security for Jacobs' appearance in the circuit court should be the

sum of $500 in cash in lieu of a bond. It was the claim of the plaintiff, and there was evidence tending to support the claim, that Misner informed the plaintiff that if $500 was put up as security, and Jacobs appeared in the circuit court for trial, the money would be refunded to the plaintiff.

Upon the trial of the instant case Jacobs testified that when Misner was talking with Mr. Cohn over the telephone, before the money was sent, that Misner said:

"I can't do it; I am not able to do it; I must have $500 cash bond to put up; the money will be returned to you on the termination of the trial."

This was denied by Misner. All agree that plaintiff wired $500 to Jacobs, and also telegraphed Misner on May 1st:

"Telegraphed Jacobs by Western Union Telegraph Company this morning at 8 o'clock, five hundred, care of sheriff."

The sheriff went with Jacobs and got the telegraph company's check for $500 on the State Bank, went to the said State Bank and got the currency, the sheriff there identifying Jacobs. They then went to the People's Savings Bank of Grand Haven, the defendant here, where they met Misner and Tubbs, the justice. Jacobs gave the money to Misner, either in the street or in the last named bank. Misner had been to the bank and had dictated the form of a certificate of deposit. Either the justice or Misner handed the money to the assistant cashier, and the latter handed to the justice the certificate of deposit, which was in the form following:

"PEOPLE'S SAVINGS BANK OF GRAND HAVEN,
MICHIGAN.
"No. 12743.   Grand Haven, Michigan, May 1, 1917.
"Charles E. Misner has deposited in this bank five hundred dollars ($500) payable to the order of Isaac

N. Tubbs in case of default of the bond given in the case of the People vs. Jacobs on the return of this certificate properly indorsed.

"A. E. GALE,
"Assistant Cashier."

The justice made due return to the county clerk in the case, and to his return he attached the certificate of deposit, indorsed by him. Jacobs subsequently, and in August, 1917, duly appeared at the circuit court, was tried upon the charge against him, and was acquitted. Misner remained the attorney of Jacobs for a short time, when he was discharged by Jacobs, who employed other counsel. Within a day or two after Jacobs was acquitted Misner demanded the certificate of deposit of the county clerk. In the meantime the plaintiff had sent an order by its Cleveland attorney (who was in attendance at the trial) to the county clerk asking the clerk to send them a draft for the amount of the money. The county clerk refused to deliver the certificate of deposit to Misner, and he at first refused to deliver the certificate on the order of the plaintiff. But upon a bond of indemnity in the sum of $1,000 having been given to the county clerk to save him harmless, he delivered the certificate to the attorney for the plaintiff.

By consent of counsel on the trial in the instant case, the following statement of the prosecuting attorney was read in evidence:

"On the back of certificate of deposit in dispute in the case, above the name of Isaac N. Tubbs, J. P., I wrote the words 'Pay to Ottawa Co. Clerk,' so that the county clerk should have control of the same, as if it were a proper recognizance filed in the case."

Upon the delivery of the certificate by the county clerk he indorsed the same. The certificate of deposit was by its attorney delivered to the plaintiff at Cleveland. It appears that Jacobs also indorsed the certifi-

cate. The plaintiff indorsed and deposited it in its bank in Cleveland, and it went forward to defendant through various banks for collection, and was presented to the defendant for payment. Payment was refused and the certificate of deposit was protested for nonpayment on August 21, 1917. It appeared on the trial that in the meantime the defendant, upon the demand of Misner, had paid the amount of the certificate to him, upon his furnishing evidence of the appearance and acquittal of Jacobs, although he (Misner) did not have possession of, or return the certificate in question.

There was evidence on behalf of plaintiff upon the trial that the money represented by the certificate of deposit belonged to, and was the money of the plaintiff and not of Jacobs.

It was the claim of the defendant that the money belonged to Jacobs, and that he authorized Misner to draw the money and deduct an amount due him for services, and that the defendant was justified in paying over the money to Misner, as the certificate showed that he deposited it, and it appeared that Jacobs had not made default.

The trial court submitted the case to the jury upon the following statement of the claims of the parties:

"It is the claim of the plaintiff that it sent $500 here to secure the appearance of Mr. Jacobs for trial; that the money was deposited with the defendant bank and a certificate of deposit issued; that Mr. Jacobs appeared as required, and that afterwards the certificate of deposit was delivered to the plaintiff, and demand for return of the money made upon the bank; that the bank refused to pay the money to the plaintiff, and thereupon the plaintiff commenced this suit to recover the sum of $500 and the interest thereon at 3 per cent. from the first day of May, 1917, and the protest fees on the certificate of deposit. * * *

"The defendant claims that the money was deposited by Charles E. Misner, and that the money belonged

to Charles Jacobs, and that Mr. Jacobs appeared for trial as required, and that afterwards the money was paid to Charles E. Misner on his demand; that Mr. Jacobs authorized Mr. Misner to draw the money and deduct his fees from the same, and return the balance to him. Those are the claims of the parties."

The jury were also charged as follows:

"In order to render a verdict for the plaintiff for the amount due on the aforesaid certificate of deposit and the protest fees, you must find by a preponderance of the evidence in this case that the plaintiff, the Cohn-Goodman Company, was the owner of this money represented by said certificate at the time this suit was commenced; that the said plaintiff, the Cohn-Goodman Company, sent to Charles P. Jacobs, through the Western Union Telegraph Company, $500, and that Mr. Jacobs received that money, and that the same was deposited in the People's Savings Bank of Grand Haven, and the above certificate of deposit issued therefor; that the above certificate was indorsed by Isaac N. Tubbs, Orrie J. Sluiter, and Mr. Jacobs, and then went through the regular course of proceedings, and was finally received by the People's Savings Bank of Grand Haven through the regular course of business, the payment refused thereon and protest made by said bank when the bank received said certificate of deposit for payment through the regular course of business aforesaid; and that the money represented by said certificate of deposit was not the money of Charles E. Misner, although it is represented by said certificate that Charles E. Misner deposited said money. And if you do so find by a preponderance of the evidence, then your verdict will be for the plaintiff for said $500 and interest thereon at 3 per cent. from May 1, 1917, to date, and the protest fees as shown you by the evidence given herein. And if you fail to so find, your verdict will be for the defendant."

The trial resulted in a verdict and judgment for the plaintiff for the amount of the certificate and protest fees. The defendant has brought the case here, and there are 43 assignments of error. These are

not discussed by appellant, but the brief presents and discusses certain propositions, some of which appear to be covered by assignments of error.

It is first argued that the instrument sued upon is not a negotiable instrument and is not subject to the incidents of negotiable paper. We do not think that question a controlling one in the case. It is at least a contract and contained the stipulation that it was payable "on the return of this certificate properly indorsed." The title to it would pass by assignment, and the assignee could recover in a suit thereon to the same extent that his assignor could. *First National Bank* v. *Carson*, 60 Mich. 432.

In order to reach the conclusion which they did, the jury must have found under their instructions that the money represented by the certificate belonged to the plaintiff. The defendant saw fit to pay over to Misner the money represented by this paper, and without requiring its return or surrender duly indorsed, and in doing so it acted at its peril. It was not required so to do by the terms of the instrument. It has been held:

"The condition that the certificate be surrendered at the time of its payment is no more than the law would require without a provision to that effect." *Zander* v. *Trust Co.*, 178 N. Y. 208 (70 N. E. 449, 102 Am. St. Rep. 492).

That language was used in speaking of a nonnegotiable instrument. There was no claim that it was a lost instrument. The party who, according to the finding of the jury, actually owned it, after it had performed its function, had possession of it, and presented it for payment properly indorsed. Payment was refused by defendant on the ground that it had paid the money to Misner because he had deposited it. Both officers of the defendant who testified stated that

the certificate came back to the bank in the regular course of business for collection.

It is next urged that the indorsements did not show title to the certificate, in the plaintiff, the last indorsement being "Pay to the order of any bank or banker," etc. We think there is no merit in this point, as the declaration stated that the plaintiff was the owner of the certificate and there was evidence tending to support the allegation.

It is next urged that the defendant refunded the money deposited to Misner, the depositor, before it had any notice that it belonged to plaintiff. What we have already said covers this point. The contract was to pay "on the return of this certificate properly indorsed." The defendant instead of standing upon its contract rights, saw fit to pay money to Misner, because he had deposited it. The mere fact that he had deposited money payable to another, gave him no right to receive the money, nor the defendant any right to pay him, without the return of the instrument duly indorsed. It should be borne in mind that the instrument did not state that the defendant would pay the money to Misner if Jacobs did not make default. There was no contingency stated in which the certificate was to be payable to Misner. We think the defendant could, and should, have protected itself by not paying the money, until the certificate was returned properly indorsed. It had it in its power to protect itself, but seems to have negligently paid the money to Misner, and now claims that the plaintiff should suffer because of such course. In our opinion the defendant is in no position to complain.

It is next urged by appellant that certain special questions which it presented should have been submitted to the jury and answered. We have examined the questions, and, without setting them forth here, it is sufficient to say that none of them was control-

ling, and, within our decisions, there was no error in refusing to submit them.

The declaration set out the transaction leading up to, and the deposit of the money, and the giving of the certificate, which was also set forth in full. The defendant demanded a bill of particulars, which was furnished. It stated that the cause of action consisted of the certificate of deposit, a copy of which was set forth in the declaration, and the interest thereon and the protest fees. It is urged by appellant that the plaintiff was permitted to ignore its bill of particulars and prove many things not mentioned therein, and that it was error to permit the plaintiff to trace the money, but it was sought to show that the money was deposited, and to show the circumstances of the transaction. We think there is no merit in this contention. There was no effort made to change the terms of the certificate. Nobody denied that the certificate properly stated that Misner deposited the money, but it was sought to show that the money belonged to the plaintiff, and the certificate did not state that the money was Misner's. The contract of the defendant did not provide for the payment of the money to Misner in any contingency.

Lastly, it is urged that the court erred in admitting the testimony by deposition of Albert A. Cohn, the president of the plaintiff company. The notice of the taking of this deposition did not state the name of the official before whom it was to be taken, but stated that it would be taken "at the office of Nathan Loesser, Engineers' Bldg., in the city of Cleveland, in the State of Ohio, a notary public," etc. The deposition was taken and returned by one E. A. Reilander, a notary public. It appeared to have been taken at the Engineers' building, city of Cleveland, and that Nathan Loesser appeared as the attorney for plaintiff, and no one appeared for the defendant. When this depo-

sition was offered there was a motion by defendant's counsel to strike out the deposition and withdraw it from the jury for the reason:

"That the name of the notary public before whom it was taken as appeared by the notice was Nathan Loesser, and that the notary who took and returned it was E. A. Reilander, another and different person, and that the notary before whom it was to be taken appears in the deposition as attorney for the plaintiff—that is, that the notice was given to take the deposition in this manner before the attorney for plaintiff as notary public, who was not a disinterested person, and who was attorney and counsel in the case.

"*The Court:* You had notice that this deposition was returned, didn't you?

"*Mr. Soule:* Yes, your honor.

"*The Court:* You did not make any written objections to it after its return?

"*Mr. Soule:* No.

"*The Court:* All right, your motion will be denied.

"*Mr. Soule:* We claim it is jurisdictional."

Our attention is called to the provisions of sections 12494 and 12497, 3 Comp. Laws 1915. Objections to notices, and to the manner of taking, certifying and returning depositions, will be waived unless made within the statutory time, and noticed for hearing, as provided by Circuit Court Rule No. 37. We think that, no objection having been made within the ten days required by the statute last cited, the same should be regarded as waived, and there was no error in the ruling here complained of. *Simonds* v. *Cash,* 136 Mich. 558, 564.

We are also of the opinion that, it being undisputed that the plaintiff furnished the money here in question, and there being no evidence that it belonged either to Jacobs or Misner, the trial court might properly have directed a verdict for the plaintiff, without receiving in evidence the deposition of Cohn. The assignments of error upon that subject therefore be-

come unimportant. *Thomas* v. *Bush*, 200 Mich. 224, 227:

We find no reversible error in the record, and as none of the errors complained of have resulted in a miscarriage of justice, the judgment below is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.