145 So. 315

## WRIGHT et al. v. MENEFEE.
### 4 Div. 683.

Supreme Court of Alabama.
Dec. 22, 1932.

Rehearing Denied Jan. 19, 1933.

A. G. Seay, of Troy, for appellants.

Lange, Simpson & Brantley, of Birmingham, for appellee.

BOULDIN, J.

The appeal is from a decree of the probate court upon final settlement of the estate of Jere A. Henderson, deceased.

Decedent died May 29, 1923. He left a will in which his wife, now Beauford H. Menefee, was sole beneficiary.

J. C. Henderson, father of decedent, was named executor of the will, and, by its terms, exempted from giving bond as executor, from filing any inventory, and from accounting in any court.

The will was probated and letters testamentary issued to J. C. Henderson August 3, 1923. No inventory was filed nor settlement of the estate made until the death of the executor April 30, 1929.

J. C. Henderson left a will. Appellants were granted letters testamentary upon the probate of such will, May 20, 1929.

On November 24, 1931, appellee instituted the present proceedings for a settlement of J. C. Henderson's accounts as ex-

ccutor of the estate of Jere A. Henderson, deceased. Code, § 5925 et seq. It appears J. C. Henderson kept an account in regular form of receipts and disbursements of his son's estate showing aggregate receipts $10,521.35, and total disbursements $10,587.38—a small excess of disbursements. This account was filed by the executors without change, except to add as disbursements several large notes executed by decedent to his father, the executor. The trial court held this account correct as to the receipts. No question in that regard is presented for review.

Turning to the items of disbursement disallowed or reduced by the trial court, we observe the notes held by the executor, J. C. Henderson, against Jere A. Henderson were never presented as claims against the estate, as required by Code, § 5814, and were therefore barred, and their payment forbidden by law.

■ The same must be said as to voucher No. 4 for $2,241.82. It appears J. C. Henderson arranged with a local bank to cash the checks of Jere A. Henderson, carry them as cash items, and at intervals J. C. Henderson took them up, giving his own check in lieu thereof. Voucher No. 4 represents an indebtedness arising in this way.

The indebtedness grew out of transactions during the lifetime of decedent. The checks were taken up soon after his death, and before the grant of letters testamentary.

Whether the claim of J. C. Henderson be treated as having arisen when the bank cashed the checks of Jere A. Henderson, or, by way of assignment from the bank, when they were taken up, it was such a claim as the law requires to be presented in due course.

■ The total funeral expenses for which credit was asked aggregated $2,017.50. Among these was voucher No. 10 for mortician's bill, $1,837.88.

The trial court reduced this to $837.88. We see no reason to put this reduction of $1,000 on the ground that the widow's personal exemption of $1,000 is first in law. The personal estate, as found by the trial court, regardless of this item, exceeded the exemption. But, considering the gross estate approximately $10,000, and this reduced by debts and expenses to less than $3,500, we decline to disturb this allowance at the instance of the executors. The utmost respect for the feelings of the father in giving a burial in keeping with the position of the family is freely accorded.

■■ The stern but necessary rules of the law, however, must deal with this case just as if a trust company were the executor. The condition of the estate, as well as family position, must needs be regarded.

Hatchett v. Curbow, 59 Ala. 516, 521; Phillips v. First Nat. Bank of Bessemer, 208 Ala. 591, 94 So. 801.

■ The item of $50 for blanket of flowers was properly disallowed. Flowers at funerals must be regarded as tokens of affection or respect from the living, not outlays from the estate of the dead.

No question of the statute of nonclaim as against the petitioner's claim as beneficiary under the will was raised in the court below. Fretwell v. McLemore, 52 Ala. 124, 137.

■ Appellants call attention to Code, § 5803, validating the express provisions of a will exempting the executor from filing an inventory or making any settlement in court, subject to exceptions expressed therein. This section, new to the Code of 1923, was inserted by the code committee. Prior thereto such provisions in a will were declared void. In fact, by section 5919 of the same Code, incorporating the amendment of 1919 (page 566), settlements were required notwithstanding such provisions in wills.

The new section 5803 became effective August 17, 1924, more than a year after letters testamentary were granted on the estate of Jere A. Henderson. Prior to that statute, however, provisions of this kind in a will were held to excuse the filing of an inventory unless and until called for by proceedings in the court having jurisdiction of the estate. Parker v. Robertson, 205 Ala. 434, 88 So. 418.

■ For present purposes we take it a like rule would apply to a provision exempting the executor from accounting in court.

■ As to the exceptions written into Code, § 5803, it will be observed they are precisely the same as in Code, § 5763, touching provisions exempting executors from making bond. This is suggestive that the new section, section 5803, should have a construction similar to that given section 5763.

Whether section 5803 should apply to estates pending when it became effective, and so excuse making a court settlement, if the estate was not in condition for such settlement at the time it became effective, we need not now consider.

■ Nothing in this section removes or lessens the obligation of the executor to faithfully execute the will. He should pay no debts not duly presented so as to become a lawful charge against the estate. The expression of great confidence on the part of the testator by such provisions in the will rather emphasizes than lessens the high obligation of the executor to execute the will faithfully in the interest of the beneficiaries named in the will. This includes the duty to pay over to the beneficiary without undue delay the moneys coming to him or her

on a proper accounting, and to deliver the property of the estate to those entitled thereto.

Admittedly, there was undue delay in this case, if, as we have found, there was a balance due the beneficiary under this will on a proper accounting. Hence interest on such balance was properly allowed from the agreed date upon which the estate should have been closed.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.